**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0177-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

FREDY A. ROSARIO,

    Defendant-Respondent.

_____

Submitted September 10, 2025 – Decided October 15, 2025

Before Judges Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 23-08-0771.

Camelia M. Valdes, Passaic County Prosecutor, attorney for appellant (Timothy P. Kerrigan, Chief Assistant Prosecutor, of counsel and on the briefs).

Markman & Cannan, LLC, attorneys for respondent (Robert R. Cannan, on the brief).

PER CURIAM

The State of New Jersey appeals from the trial court's sentence of defendant to probation following his guilty plea to a second-degree violation of N.J.S.A. 2C:39-5(b)(1). Because we conclude the trial court misapplied the sentencing guidelines, we vacate the sentence and remand for re-sentencing.

The parties agree to the following statement of facts:

> On January 1, 2023, [d]efendant was operating a motor vehicle while intoxicated, and while he unlawfully possessed a loaded handgun. . . . While doing so, [d]efendant exited his car and became involved in a dispute with a parking attendant. . . . During that dispute, [d]efendant told the victim, "I will kill you and shoot you in the head you piece of s[**]t. I will kill you right now and you'll stay dead." . . . Defendant did not remove the handgun from the car, brandish it, or point it at the victim. . . . After leaving the scene, [d]efendant was pulled over after a police officer observed him using a cell phone while driving. . . . Defendant stumbled while exiting his car; then dropped his wallet on the ground and didn't have the balance to pick it up. . . . Defendant had a blood alcohol content of .09. . . .

Defendant was indicted as follows: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count one), and third-degree terroristic threat, N.J.S.A. 2C:12-3(b) (count two). Defendant was also charged with driving while intoxicated, N.J.S.A. 39:4-50; and issued a ticket for using a cell phone while driving.

2

The State filed a waiver of the mandatory minimum sentence under N.J.S.A. 2C:39-5(b)(1), and in exchange for defendant's plea to count one, agreed to recommend a three-year prison term with one year to be served without parole eligibility. In effect, the State agreed that defendant would be sentenced in the third-degree range. The charge of terroristic threats was to be dismissed. Defendant pleaded to count one and noted, at sentencing, he would argue for probation without any prison time. The State objected to probation.

At sentencing, defendant pleaded guilty to driving while intoxicated under N.J.S.A. 39:4-50, and the State dismissed the cell phone ticket.

As to sentencing, defendant argued he had no prior criminal history. He also asserted that he was sixty-four years old and was "in poor health." He alleged he had "severe diabetes," "suffered two strokes, both of which resulted in the placement of . . . medical stent[s]," "suffered a heart attack," and was "advised by [his] doctor that he [wa]s not expected to live a long life." Defendant contended he had two children, ages thirty-six and thirty-seven; and three grandchildren, ages eighteen, twelve, and two. Defendant asserted he was married for over twenty-five years but was divorced "just prior to this offense." He blamed his use of alcohol for "ruining his marriage" and "harming the

3

relationship he . . . had with his children and his grandchildren." He contended that because of this incident, he no longer drinks alcohol.

In his statement to the court, defendant expressed he was "very sorry" and "promise[d this would] never happen again." Further, defendant stated his drinking affected him and his family. He offered a "guarantee" and was "one hundred percent sure" this was never going to "happen again."

The trial court found defendant: (1) was sixty-four years old; (2) had no prior record; (3) had no substance abuse issues or treatment; (4) previously worked, was unemployed, and on social security; (5) was married and divorced in 2022, has a great relationship with his children, and is an "involved grandparent"; and (6) was no longer drinking alcohol.

In considering sentencing, the trial court assessed mitigating and aggravating factors. See N.J.S.A. 2C:44-1. As to mitigating factors, the court found factor: (1) whether defendant "caused nor threatened serious harm," N.J.S.A. 2C:44-1(b)(1), was not applicable or "not given much weight," considering defendant had a loaded gun, was intoxicated, the victim was impacted, and the situation could have escalated very quickly; (7) whether defendant had a "history of prior . . . criminal activity," N.J.S.A. 2C:44-1(b)(7), was applicable or "give[n] somewhat medium weight," because defendant had

no record; (8) whether "defendant's conduct was the result of circumstances unlikely to recur," N.J.S.A. 2C:44-1(b)(8), was not applicable or "not . . . given much weight" because the court was "not convinced . . . this conduct was the result of circumstances unlikely to reoccur"; (9) whether defendant's "character and attitude . . . indicate[d] that he was unlikely to commit another offense," N.J.S.A. 2C:44-1(b)(9), was "clearly applicable" and "given somewhat medium weight" because defendant was "clearly remorseful," plus "[h]e is 64 years old," "[h]as health challenges," has a "close relationship" with his adult children and grandchildren, "[t]he youngest one being" two years of age, when he "addressed the [c]ourt, he appeared to be genuinely sorry, remorseful"; and "since he [was] . . . picked up on this charge, he has not picked up any other charges . . . [or] motor vehicle offenses in terms of driving while intoxicated"; (10) whether "defendant is particularly likely to respond affirmatively to probationary treatment," N.J.S.A. 2C:44-1(b)(10), was applicable because "probation will [provide] enough of a deterrence"; (11) whether "imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents," N.J.S.A. 2C:44-1(b)(11), was not applicable because defendant had no dependents and while prison would impose a hardship it was not "an excessive hardship" because defendant's "hardship [wa]s not unique or something

5

idiosyncratic"; (12) whether there was a "willingness of . . . defendant to cooperate with law enforcement authorities," N.J.S.A. 2C:44-1(b)(12), was applicable and "give[n] somewhat low weight because . . . [defendant was] not fleeing the scene and [was] being cooperative in the sense that this gun was located when he remained on the scene"; (13) N.J.S.A. 2C:44-1(b)(13), was not applicable because defendant was "not a youthful defendant"; and (14) N.J.S.A. 2C:44-1(b)(14), was not applicable, "because defendant [wa]s . . . not under the age of 26 at the time of the offense."

With regard to aggravating factors, the court found factor: (3) "[t]he risk . . . defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), was applicable and "given somewhat low weight" because "[t]here [wa]s a risk that . . . defendant would commit another offense" and (9) "[t]he need for deterring . . . defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9), was applicable because "both general and specific deterrents [we]re applicable to this defendant" and given "somewhat . . . low weight." The court found "no other aggravating factors that [we]re applicable."

The trial court noted defendant pleaded to a second-degree charge. Therefore, "[i]n order to sentence . . . defendant one degree lower, . . . the [c]ourt [stated it] must be clearly convinced that the mitigating factors substantially

6

outweigh the aggravating factors, and the interest of justice demanded" a lower sentence. The court concluded that "because th[e] . . . mitigating factors substantially outweigh the aggravating factors, the defendant could now be sentenced to a one degree lower." Therefore, the court sentenced defendant to probation, finding probation would provide sufficient deterrence.

Further, the trial court found "that the defendant's imprisonment would do a serious injustice, which overrides the need to deter others by such conduct." The court further found "the character of . . . defendant and [his] attitude . . . satisfied [it that] after weighing the factors that the mitigating factors substantially outweigh[ed] the aggravating factors."

The State appealed and the matter was placed on a sentencing calendar pursuant to Rule 2:9-11. Having determined the matter was not ready for disposition without full briefing, the matter was rescheduled and placed on a plenary calendar.

On appeal, the State argues the trial court abused its discretion when it imposed probation because the sentence was not supported by the trial court's "own findings, the correct standard, or the facts of the case."

Defendant counters "the State had agreed to recommend a three-year sentence with a one-year period of parole ineligibility" and he "would be asking

7

for probation." Therefore, defendant asserts "[i]t is at least a bit surprising that the State would agree to one of two possible outcomes and then seek relief from . . . what is exactly the bargain that they entered into." The State denies any agreement regarding a sentence to probation.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014); see also State v. Torres, 246 N.J. 246, 258 (2021) (Our review is guided by an abuse of discretion standard.). Thus, a "reviewing court must not substitute its judgment for that of the sentencing court." Ibid.

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984).
>
> [Ibid. (alteration in original).]

Under certain circumstances, a sentencing judge may downgrade a second-degree offense. N.J.S.A. 2C:44-1(f)(2) provides:

> In cases of convictions for crimes of the . . . second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice

demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which the defendant was convicted. If the court does impose sentence pursuant to this paragraph, . . . the sentence shall not become final for 10 days in order to permit the appeal of the sentence by the prosecution.

[(Emphasis added).]

"Accordingly, downgrading, while not required, is appropriate where both prongs of the statutory test are satisfied." State v. Trinidad, 241 N.J. 425, 453 (2020).

"[T]he Code does not define the 'interest of justice.'" Id. at 454 (quoting State v. Megargel, 143 N.J. 484, 500-02 (2020)). Nevertheless, the standard imposes a "high bar, requiring 'compelling' reasons for a downgrade." Ibid. (quoting Megargel, 143 N.J. at 500-02).

Generally, the reasons that compel a downgrade must be in addition to, and separate from, the mitigating factors. Megargel, 143 N.J. at 502. As the focus of the inquiry is on the offense rather than the offender, "the most single important factor" is the severity of the crime. Id. at 500. Determining a crime's severity involves consideration of the "factual circumstances," including whether the defendant's crime was "similar to a lower degree offense, thus suggesting that a downgraded sentence may be appropriate." Ibid. The defendant's role in the crime is also relevant. Id. at 501 ("Was the defendant the mastermind, a loyal follower, an accomplice whose shared intent is problematic, or an individual who is mentally incapable of forming the

9

necessary criminal intent?").  We further consider the sentence from the perspective of deterrence.  Ibid.  And, finally, we hesitate to downgrade where the Legislature has provided an enhanced penalty for a particular offense.  Id. at 502.

[Ibid. (citations reformatted).]

"A person convicted of violating [N.J.S.A. 2C:39-5(b)] . . . shall be sentenced by the court to a term of imprisonment."  N.J.S.A. 2C:39-5(i); see also N.J.S.A. 2C:43-6(c) ("Graves Act") ("A person who has been convicted under [N.J.S.A. 2C:39-5(b)], . . . shall be sentenced to imprisonment by the court.").  "In the case of a crime of the second degree," the "term of years . . . shall be fixed by the court and shall be between five years and [ten] years."  N.J.S.A. 2C:43-6(a)(2) and "[i]n the case of a crime of the third degree," the "term of years . . . shall be fixed by the court and shall be between three years and five years."  N.J.S.A. 2C:43-6(a)(3).

Under N.J.S.A. 2C:43-6(c), "[t]he minimum term shall be fixed at one-half of the sentence imposed by the court or 42 months, whichever is greater, . . . during which the defendant shall be ineligible for parole."

However,

[o]n a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under . . . N.J.S.A. 2C:43-6[(c)] for a defendant who has not previously been convicted of an

offense under that subsection, . . . <u>does not serve the interests of justice</u>, the assignment judge shall place the defendant on probation pursuant to . . . [N.J.S.A. 2C:43-2(b)(2)] or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. . . .

[N.J.S.A. 2C:43-6.2 (emphasis added).]

Therefore, N.J.S.A. 2C:43-6.2 "exempts certain first-time offenders convicted of Graves Act offenses from the mandatory minimum terms of incarceration that the statute otherwise requires." <u>State v. Nance</u>, 228 N.J. 378, 391 (2017).

Concerning the presumption of incarceration, N.J.S.A. 2C:44-1(d) provides:

The court shall deal with a person who has been convicted of a crime of the first or second degree, . . . by imposing a sentence of imprisonment <u>unless, having regard to the character and condition of the defendant, it is of the opinion that the defendant's imprisonment would be a serious injustice which overrides the need to deter such conduct by others.</u>

[N.J.S.A. 2C:44-1(d) (emphasis added).]

The Court has noted "[t]he 'serious injustice' threshold is higher than the showing necessary to downgrade an offense." <u>Trinidad</u>, 241 N.J. at 456 (quoting <u>Megargel</u>, 143 N.J. at 501). Indeed, "the standard for invalidating sentences because of a 'serious injustice' is extremely narrow: it should be applied only

11

under circumstances that are 'truly extraordinary and unanticipated.'" State v. Jarbath, 114 N.J. 394, 406-07 (1989) (quoting Roth, 95 N.J. at 358). The finding of "'extraordinary and unanticipated' sentences" is uncommon. Id. at 407 (quoting Roth, 95 N.J. at 358). "It is . . . the rare case where imprisonment for serious crimes will not further the goals of general deterrence." Id. at 408. It occurs only "where the 'human cost' of punishing a particular defendant to deter others from committing his offense would be 'too great.'" State v. Evers, 175 N.J. 355, 389 (2004) (quoting State v. Rivera, 124 N.J. 122, 125 (1991)).

Nevertheless, "there may be instances where the character and condition of the defendant are so idiosyncratic that incarceration or extended imprisonment for the purposes of general deterrence is not warranted." Jarbath, 114 N.J. at 408.

In Jarbath, where the defendant was an intellectually disabled "twenty-one[-]year[-]old woman who ha[d] also been diagnosed as psychotic. . . . [And] . . . was charged with the knowing murder of her nineteen-day-old son," id. at 398, the Court concluded imprisonment would impose a serious injustice. The Court held:

> There was little evidence to suggest that defendant could comprehend that she had committed a crime that deserved a prison term, or that she could modify her behavior based on her imprisonment. In addition,

defendant did not have the understanding or emotional strength of relatively normal persons. She apparently could not endure life in prison without unusual suffering, that is, hardship and privation greatly exceeding that which would be accepted and endured by ordinary inmates as the inevitable consequences of punishment. In sum, . . . the "serious injustice" of imprisonment under these circumstances clearly outweigh[ed] the needs of general deterrence.

[Id. at 408-09.]

In State v. E.R., we affirmed "the sentencing judge['s] . . . discretionary decision to impose probation rather than incarceration" when the defendant presented "with an uncontradicted prognosis of imminent death within six months due to an active disease process." 273 N.J. Super. 262, 265 (App. Div. 1994). We were convinced the defendant's condition could "be considered 'idiosyncratic' so as 'to forestall the deterrent effect of incarceration.'" Ibid.

In Nance, the Court considered "the role of the presumption of incarceration prescribed by N.J.S.A. 2C:44-1(d) in the assignment judge's sentencing determination under [N.J.S.A. 2C:43-]6.2 for a . . . second-degree Graves Act offender." Nance, 228 N.J. at 394-95.

In "harmoniz[ing] the two components of the Code's sentencing scheme," id. at 395-96, the Court noted, "[n]othing in either provision suggests that a Graves Act waiver exempts a defendant convicted of a . . . second-degree

offense from the presumption of incarceration." Id. at 396. Instead, "[b]y considering the standard of N.J.S.A. 2C:44-1(d) in deciding between the probationary and custodial sentences authorized by [N.J.S.A. 2C:43-]6.2, an assignment judge or presiding judge achieves the legislative objectives of both provisions." Ibid. Therefore, "[t]he presumption of incarceration set forth in N.J.S.A. 2C:44-1(d) should apply when an assignment judge or his or her designee chooses between [N.J.S.A. 2C:43-]6.2's alternative sentences." Id. at 397.

Applying this well-established framework, we conclude the trial court misapplied its discretion in sentencing defendant. We start with the State's acknowledgment that "the facts and circumstances justif[ied] a downward departure and imposition of the previously agreed upon three[-]year sentence with one[-]year parole ineligibility." Therefore, there is no challenge to the trial court's conclusion that defendant could receive a lower sentence than his second-degree plea. The three-year sentence would comport with N.J.S.A. 2C:43-6(a)(3).

However, the State asserts the court erred in ordering probation, because the presumption of incarceration cannot be overcome under N.J.S.A. 2C:44-(f)(2), absent "a serious injustice that overrides the need to deter others." The

14

State notes "the presumption is not overcome merely because the mitigating factors preponderate over the aggravating factors." Instead, the State asserts "a defendant must be 'idiosyncratic' in order to 'forestall the deterrent effect of incarceration' significantly enough to meet the 'serious injustice' standard." The State emphasizes the trial court specifically found defendant's incarceration would impose a hardship on defendant, however, defendant's hardship was neither unique nor idiosyncratic.

We are persuaded by the State's arguments. Defendant does not present with the conditions described in Jarbath or E.R. to warrant a finding of "serious injustice" under N.J.S.A. 2C:44-(f)(2). The trial court's reference to defendant's age, medical issues, and relationship with his family, are common hardships associated with imprisonment. Indeed, "[i]mprisonment generally results in hardship. It is not enough, however, that a defendant would find incarceration difficult." State v. Jabbour, 118 N.J. 1, 8 (1990).

Thus, we conclude the trial court misused its discretion in applying the sentencing guidelines.

Vacated and remanded for re-sentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

15